USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/16/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

UNITED STATES OF AMERICA,

-against-

CARLOS DJEMAL NEHMAD,

Defendant.

------------------------------------------------------------- x

**ORDER GRANTING MOTION FOR RELEASE**

16 Cr. 829 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Defendant Carlos Djemal Nehmad ("Djamal") has served approximately 34 months of a 75-month custodial sentence. He renews his motion for compassionate release, alleging new grounds and a change in governing law. I grant his motion.

Djamal pleaded guilty on September 19, 2017 to wire fraud, in violation of 18 U.S.C. § 1343, as a leader and organizer of a complex scheme to cheat Mexican tax authorities of millions of dollars through an export-import scheme using Mexican and United States' citizens and United States' corporate dummies. *See* Indictment, ECF No. 33, at ¶ 6, and plea of guilty, ECF No. 80. On May 29, 2018, I sentenced Defendant to 75 months' imprisonment to be followed by three years of supervised release. *See* Judgment, ECF No. 131, at 1-2; Sentencing Tr., ECF No. 140, at 7:2-3. The Sentencing Guidelines, driven upwards by the amount of tax revenues Mexico lost, had provided a custodial range of 97 to 121 months. Defendant surrendered into custody in July 2018 and, taking pre-bail detention into account, has served approximately 34 months of his 75-month custodial sentence.

On July 16, 2020, Djemal moved to reduce his sentence to time-served, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), primarily on the grounds that FCI Miami, the facility at which

he then was housed, was experiencing a COVID-19 outbreak. *See* ECF Nos. 159, 160. I denied the motion on August 10, 2020, holding that Djemal had not shown "extraordinary and compelling reasons" for reducing his sentence pursuant to 18 U.S.C. § 3553(a). Djemal asks me to reconsider that ruling, moving alternatively for reconsideration or, by a renewal of the motion, upon new grounds made available by changes in the law and on the basis of recent events. (ECF No. 168). For the reasons that follow, I grant his motion.

## Discussion

Djemal's motion for reconsideration comes late. The Court's local rules provide that a "motion for reconsideration . . . shall be filed and served within fourteen (14) days after the Court's determination of the original motion." Criminal Local Rule 49.1(d). October 8, 2020, the date this motion was filed, is more than 14 days after I decided his earlier motion, August 10, 2020. *United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 1331955, at *1 (S.D.N.Y. Mar. 23, 2020) (citing *United States v. Yannotti*, 457 F. Supp. 2d 385, 390 (S.D.N.Y. 2006)). However, "courts retain discretion to excuse an untimely filing," and I exercise my discretion to review the merits of Defendant's motion.[1] *See Lisi*, 2020 WL 1331955 at *1.

A motion for reconsideration "may be granted where the moving party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Spencer*, No. 04 CR. 1156 (PAE), 2020 WL 3893610, at *3 (S.D.N.Y. July 10, 2020) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quotations omitted)).

---

[1] Defendant bases his argument, in part, on a Second Circuit decision published a few weeks after issuance of the Court's August 10, 2020 order, *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020)). Under the circumstances described in this order, there is good cause to excuse the delayed filing. *See United States v. Okparaeke*, No. 17-CR-225 (NSR), 2019 WL 4233427, at *2 (S.D.N.Y. Sept. 6, 2019) (noting that courts may excuse an untimely filing for good cause).

2

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *Patterson v. United States*, No. 04 CIV. 3170(WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006). A court may grant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) when "extraordinary and compelling reasons" warrant such a reduction, and after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *See United States v. Fisher*, No. 1:83-CR-00150-PAC-1, 2020 WL 5992340, at *3 (S.D.N.Y. Oct. 9, 2020).

Djemal points to two developments, both following the Court's August 10, 2020 order denying compassionate release, that should be, and previously had not been, considered: (1) an assumption of the August 10 order that Defendant soon would be transferred to Mexican custody which, because of clumsiness and errors by BOP, did not occur, causing substantial harm and suffering to Defendant; and (2) a Second Circuit decision issued in September, a month after my order, expanding the considerations for compassionate release. *United States v. Broker*, 976 F.3D 228 (2d Cir. 2020[2] Djamal also argues a third ground: the calculations under the Sentencing Guidelines based upon the amount of loss did not sufficiently consider that the loss was suffered by a foreign government. *See United States v. Azeem*, 946 F.2d 13, 17 (2d Cir. 1991) and *United States v. Chunza-Plazas*, 45 F.3d 51, 57-58 (2d Cir. 1995).

*Brooker* relaxed the considerations for finding extraordinary and compelling reasons for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *See Brooker*, 976 F.3d at 237–38. The First Step Act, the Second Circuit held, enabled district courts to consider a "full slate of reasons" to constitute extraordinary and compelling circumstances to justify a compassionate release, *Brooker*, 976 F.3d at 237, for example, family circumstances, *see, e.g.,*

---

[2] Defendant's brief refers to this case as "United States v. Zullo," however, the case caption on both Lexis and Westlaw shows "United States v. Brooker," and that is the caption used in this order.

*United States v. Hasanoff*, No. 10-CR-162 (KMW), 2020 WL 6285308, at *2-3 (S.D.N.Y. Oct. 27, 2020) (granting early release of defendant who had served approximately seven years of an 18-year sentence because defendant's mother was in poor health and in need of care, and because defendant showed significant rehabilitation).

Previously, many district courts in this Circuit considered that their discretion was limited to policies set out by the United States Sentencing Commission. *See, e.g., United States v. Zukerman*, 451 F. Supp. 3d 329, 335 (S.D.N.Y. 2020) (noting that the authority to define "extraordinary and compelling reasons" has been granted to the Sentencing Commission); *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) (observing that a court may reduce a term of imprisonment after finding, *inter alia*, that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission). *Brooker* changed that, and Djemal urges that the change justifies reconsideration of my earlier ruling that he had not shown "extraordinary and compelling circumstances to justify compassionate release. I agree.

I knew in August of this year, when I denied Djemal's motion for early release, that the BOP had determined in November 2019 to transfer Djemal to Mexican prison authorities, to serve the remainder of his sentence in Mexico. *See* Gov't Mem. in Opp. to Def's Mot. for Compassionate Release, ECF No. 166, at 5; *see also* ECF No. 166-2 (BOP represents that Defendant is "pending a treaty transfer to Mexico"); ECF No. 173 ("[T]he BOP has approved the defendant to serve the remainder of his sentence in Mexico."). What was the point to give Djemal early release from a U.S. jail, I considered, if he was soon to be transferred to a Mexican jail. Thus, I denied his motion, but urged BOP to transfer Djemal expeditiously. A year later, Djemal still sits in jail.

Twice, BOP moved Djemal from one jail to another, intending that he be part of a scheduled plane-load of transferees. Twice, BOP, through its own mishaps, missed the schedule. And now Djemal sits, in quarantine, in La Tuna FCI, just outside of El Paso, where the coronavirus rages unabated. Prisoners in Djemal's unit have succumbed to infection. No doctor has been available to treat Djemal's own medical needs, his diabetes, sciatica and multiple hernias, making him more vulnerable to coronavirus infection.

Djemal suffers further indignities. BOP has lost Djemal's personal possessions in the prison transfers, including his *t'fillin,* the phylacteries that are fundamental to Jewish morning prayers.[3] He has not seen any member of his family in four years; they have been denied visas to travel to the United States. He pleads that the deprivations have left him physically and emotionally ill.

I hold that the circumstances described above constitute "extraordinary and compelling reasons" in favor of compassionate release. *Hasanoff,* 2020 WL 6285308, at *2-3.

The sentencing considerations of 18 U.S.C. 3553(a) do not outweigh this holding. *See United States v. Ebbers,* 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020) ("[I]n considering the section 3553(a) factors, [the Court] should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release."). Defendant's crime was serious; it defrauded the Mexican government of millions of dollars of tax revenues, and involved U.S. persons and companies. *See* Sentencing Tr., ECF No. 140, at 46-48. Defendant

---

[3] *T'fillin,* or phylacteries, are two hand-made leather boxes, with compartments to contain four hand-written passages of scripture. The boxes are wound with related leather straps upon the left arm close to the heart, and on the forehead over the eyes, to remind the Jewish worshipper of the singularity of God, and to carry out the injunction in Torah to love the Lord your God with all your heart and soul and might. The binding of *t'fillin* close to heart and mind are commanded in Torah and express the worshipper's love and commitment to God, religion and faith. See Deuteronomy, 6:5-8 and, generally, https://www.jewishencyclopedia.com/articles;14283-tefillin; and ou.org/Judaism-101/glossary/tefillin. *T'fillin* are valuable, costing several hundreds of dollars, customarily given by a father or grand-father to a bar mitzva boy, and thereafter used and cherished. Physically, their loss can be replaced; emotionally, their loss is irreparable.

pled guilty to the crime, did not challenge the calculations of loss in relation to the level of punishment provided by the Sentencing Guidelines (as he probably could have), and accepted responsibility for his actions. *See id.* at 5-6. He is a first-time offender. *Id.* at 7. He has served almost three years in federal prison, satisfying the goals of general and specific deterrence, and is likely to face additional penalties upon returning to Mexico, including incarceration in a Mexican jail, since it was Mexico that lost substantial revenues from Djemal's crimes, and it was in Mexico that many of Djemal's crimes were committed. There is little likelihood that Djemal will be committing any further crimes.

The substantial loss to the Mexican government drove the Guidelines calculation to a Criminal Offense level of 30 and a custodial range of 97 to 121 months. Although the custodial sentence I gave, 75 months, was well below the Guidelines range, it was affected by the Guidelines calculation. And that Guidelines calculation was affected less by criminal activities in the United States and more by loss to the government of Mexico.

Defendant argues in his motion that it was error to give such weight to a foreign government's loss, citing *United States v. Azeem*, 946 F.2d 13, 17 (2d Cir. 1991) and *United States v. Chunza-Plazas*, 45 F.3d 51, 57-58 (2d Cir. 1995). In *Azeem,* the Court did not allow a sale of heroin from one foreign country to another to be included in determining the base level of a conspiracy to import heroin into the United States. In *Chunza-Plazas,* the Court did not allow unrelated foreign conduct to serve as basis for an upward departure for crimes committed in the United States. The two cases are distinguishable. Djemal's frauds within the United States were integral to his scheme. As I pointed out in the Sentencing Hearing, the cheating of the Mexican tax authorities by manipulations of its value-added tax (VAT) involved exports into the United

States, co-defendants living in the United States, and corporations and bank accounts also in the United States.

The sentence of Djemal was not improper. But it was high, influenced too much by the loss to Mexico. My decision to grant compassionate release to Djemal does not bar Mexico from acting against him as it considers appropriate, by criminal prosecution, restitution, or otherwise. Under *Brooker,* however, these considerations add to the "extraordinary and compelling" circumstances justifying Djemal's compassionate release.

For the reasons described in this opinion, I grant Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and sentence him to time served. My sentence of three years supervisory release is revoked. It also was motivated by considerations of restitution, and is unnecessary in light of jurisdiction of the Mexican authorities to pursue restitution against Djemal.

Defendant is a "deportable alien" subject to an ICE detainer. *See* Presentence Investigation Report, ECF No. 113, at 2, 31. He is ready, willing and able to go to Mexico, immediately. Counsel have advised me that ICE will take custody of him immediately upon his release and take him across the border the same day, directly to Mexican immigration services in Juarez, Mexico, where his family can make arrangements to see him or return home with him, as Mexican authorities direct, free of further obligation to U.S. BOP or this court. I order the Warden of La Tuna to release Djemal to the District Director of ICE at 10:00 a.m., November 23, 2020, and I order the District Director of the District encompassing El Paso to take custody of Djemal, there and then, and promptly bring him across the border to Mexican immigration authorities in Juarez, Mexico. The sentence of supervisory release is revoked. The Clerk is ordered to terminate the open motion (ECF No. 170). The Assistant U.S. Attorney responsible

for the prosecution of this case shall report to the court promptly upon Djemal's release and transfer to Mexican immigration authorities in Juarez, Mexico.

        SO ORDERED.

Dated:    November 15, 2020
             New York, New York

                                                ALVIN K. HELLERSTEIN
                                                United States District Judge